Carl L. SALSMAN, Plaintiff-Appellee,

v.

Henry D. WITT and Pauline Witt, Defendants-Appellants.

No. 71–1727.

United States Court of Appeals, Tenth Circuit.

Sept. 8, 1972.

David J. Potter, Texarkana, Ark. (Potter & Potter, Texarkana, Ark., M. Dar-

win Kirk, Tulsa, Okl., and Rucker, Tabor, McBride & Hopkins, Tulsa, Okl., on the brief), for plaintiff-appellee.

James M. Hinds, Tulsa, Okl. (Edgar, Manipella & Williams, Tulsa, Okl., on the brief), for defendants-appellants.

Before HILL, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

The central issue here to be resolved concerns the use made by the trial judge in a trial without a jury of certain depositions. Though the depositions in question were not introduced into evidence, counsel specifically declining an invitation by the trial court to so do, the trial judge nonetheless thereafter based his findings, at least in part, on the contents of such depositions. We conclude that the trial court's use of these depositions was improper and that the judgment entered must now be reversed. Some background will put the matter in focus.

Carl Salsman brought an action against Henry and Pauline Witt, alleging that under a lease agreement the Witts had granted him an option to purchase certain land in Bowie County, Texas; that he had duly exercised his option to purchase in accordance with the terms of the lease agreement; and that the Witts had breached the option agreement by refusing to convey the land in question. By way of the relief requested, Salsman sought specific performance or, in the alternative, money damages. It later developed that the Witts had sold the land in question to a third party and accordingly the action proceeded as one solely for money damages.

By answer, the Witts denied that Salsman had duly exercised his option under the lease agreement, and alleged that, on the contrary, Salsman had in fact abandoned the leased premises, and accordingly they, the Witts, were under no duty to convey.

About six weeks before the matter came on for trial, Salsman sought leave of court to file an amended complaint. In the amended complaint Salsman alleged, among other things, that the Witts by their conduct had waived the requirement of the lease agreement that the option be exercised in writing and that he, Salsman, relying on such waiver, had orally exercised his option to purchase. Although the record is a bit unclear, it would appear that the trial court denied the motion to file an amended complaint and that the case proceeded to trial presumably on the issues framed by the initial complaint and the answer thereto.

It would also appear that sometime before trial the depositions upon oral examination were taken of Salsman and Henry Witt, the record again being unclear, though the parties here are apparently in agreement that these are the particular depositions with which we are now concerned. Let us examine the record in a bit of detail in an effort to determine the exact role played by the depositions. We would note that the depositions in question are not included in the record before us.

At the outset of the trial, the following colloquy occurred between the trial court and counsel for the Witts:

"THE COURT: * * * Do you want to introduce these depositions into evidence, is this agreeable to the parties?

"MR. EDGAR: No, your Honor, that would not be agreeable. The depositions contain much information which is objectionable.

"THE COURT: For instance what?

"MR. EDGAR: There is considerable hearsay in the depositions.

"THE COURT: Well, you can offer it in evidence for what it is worth. Call your first witness. * * *"

The first witness called was the plaintiff, Salsman, and after a few preliminary questions were asked on direct ex-

amination, the court interjected as follows:

"That's all set out in the depositions. I am not going to let you go into anything that's already in these depositions whether he agrees they are in there or not. I am going to consider them. I have read them. That's what they were taken for, to read and understand what this is about."

Before proceeding to a consideration of the findings of the trial court, reference should first be made to the lease agreement and the option to purchase contained therein, the lease agreement having been duly received into evidence.

The lease in question was entered into by Salsman and the Witts on November 10, 1964, and the leasehold term ran for a period of one year, commencing November 21, 1964, and terminating November 21, 1965. The monthly rental payment was $135 per month, with two months rent, i. e., $270, being paid in advance, such sum representing the monthly rental due on the first and last rental periods under the lease, i. e., the rent due on November 21, 1964, and on October 21, 1965.

The lease agreement further provided that Salsman, the lessee, had the right and option to purchase the property covered by the lease upon the following terms and conditions:

"That for and in consideration of the sum of $1.00 to Lessors in hand paid by Lessee, Lessors agree that said Lessee shall at any time during the term of this Lease upon notifying Lessors in writing at least thirty (30) days prior to the payment of any regular monthly rental as herein stipulated that Lessee desires to exercise his Option to purchase the property herein described and Lessors hereby agree to sell the same unto the said Lessee at and for a consideration of $28,000.00 of which said sum Lessee shall pay

$5,000.00 cash and assume the unpaid balance then existing and due and owing unto FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF TEXARKANA, * * * ."

Salsman's testimony, such as it was, indicated that on October 21, 1964, he personally served written notice on Henry Witt of his desire to exercise his option to purchase and in connection therewith tendered a check for $5,000. Additionally, Salsman also testified that three or four months prior to October 21, 1965, he had orally advised Witt of his intent to purchase. Asked as to Witt's reaction to the oral notice, Salsman testified as follows:

"Favorable. Didn't seem like anything was anything but friendship. It was always tomorrow or this next week, 'I'm busy', 'I'll get my lawyer,' 'I'll get them and notify them', and we just, he was pushing me off all the time, in my opinion, and trying to let the contract expire so he wouldn't have to go through with it."

Witt, in his brief testimony, stated, in effect, that he had never misled or put off Salsman; that Salsman had never personally, or otherwise, delivered or caused to be delivered a written notice of intent to exercise his option to purchase, nor had he ever given oral notice to that effect; and that actually he would have been glad to sell to Salsman had the latter ever evidenced a desire to buy.

As indicated, the examination of Salsman and Henry Witt, both direct examination and cross-examination, was relatively brief. Neither party developed fully the issues in the case. And the record indicates that this was undoubtedly so because of the trial court's repeated admonitions to the effect that counsel would not be permitted to go into "anything that's already in these depositions."

Upon conclusion of the trial, the trial judge made certain oral findings from

the bench and directed counsel to prepare formal findings for his signature. In his oral findings, the trial court specifically noted that his findings were based on other things, "from reading the depositions." The trial court then found that Salsman's tender of October 21, 1965, was a valid exercise of his option under the lease.

In the formal findings later signed by the trial court, no reference, as such, is made to the fact that the trial court relied on the depositions of Salsman and Henry Witt, unless it be inferred from the statement that in making its formal findings the trial court had examined the "files and records." Be that as it may, the record as a whole indicates beyond any doubt that in making its findings the trial court had in fact relied on, in part, the depositions of Salsman and Witt.

In his formal findings, the trial court not only found that Salsman's tender of October 21, 1965, was "in accordance with the requirements of the lease," but also found that the Witts "by their course of conduct and their dealings waived the requirement in the lease that the notification of the exercise of the option be in writing."

It is on this general state of the record that the trial court entered judgment against the Witts and in favor of Salsman in the amount of $14,350, plus interest and costs. The Witts now appeal and urge, among other things, that the use by the trial court of the depositions which had not been introduced into evidence was improper and that under the circumstances the error was prejudicial. We agree.

▪ Fed.R.Civ.P. 32(a)(3) spells out when a deposition may be used upon trial in place of oral testimony. It should be noted that we are not here concerned with the use of a deposition on cross-examination for purposes of impeachment or use by an adverse party, as provided for in 32(a)(1) and (2) respectively. The various restrictions imposed by Rule 32(a)(3) upon the use of depositions at trial make it clear that there has been no change in the long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness be unavailable to testify in person. Wright and Miller, Federal Practice and Procedure, Civil: § 2142. Or, as was stated by Judge Learned Hand, in Napier v. Bossard, 102 F.2d 467 (2d Cir. 1939): "The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand." Indeed, the rule itself suggests "the importance of presenting the testimony of witnesses orally in open court."

▪ Counsel for Salsman suggests that possibily the exception provided in Rule 32(a)(3)(E) is applicable. We do not agree. It is clear to us that under none of the exceptions appearing in Rule 32(a)(3) could the depositions of Salsman or Henry Witt have been used in lieu of their oral testimony, even if the depositions had been offered, which they definitely were not. So, under the circumstances, if the depositions of Salsman or Henry Witt had been offered into evidence under Rule 32(a)(3) in lieu of their oral testimony, it would have been error to receive them. A fortiori, it was also error for the trial court to use the depositions in question in connection with its findings.

This particular point was considered in Processteel, Inc. v. Mosley Machinery Company, Inc., 421 F.2d 1074 (6th Cir. 1970), where the practice of using parts of depositions never offered in evidence was expressly disapproved. In that case it was held, however, that since there was ample evidence in the record, independent of the depositions in question, to support the trial court's findings, the judgment need not be reversed. In the

instant case, we find no such independent supporting evidence.

The trial court's finding that Salsman's serving of notice on October 21, 1965, of his intent to exercise his option coupled with a tender of $5,000 was in accord with the requirements of the lease agreement finds no support in the record before us. Counsel are in some disagreement as to whether the monthly rental due October 21, 1965, was a "regular monthly rental," as called for by the lease agreement, in view of the fact that the last month's rent was paid at the outset of the leasehold term. Be that as it may, the lease agreement called for exercise of the option at least thirty days *prior* to the payment of any regular monthly rental. And even under Salsman's theory of the case, his exercise of the option to purchase came on the very day his last regular monthly payment was due, not thirty days *prior* thereto. Whether on trial he can on some legal or equitable grounds escape the language, which at first blush, at least, seems quite plain and understandable, remains to be seen.

As concerns the trial court's alternative finding that the Witts by their conduct had waived the requirement in the leasehold agreement that the option to purchase be exercised in writing, the record before us is too sketchy to support such finding. Perhaps the depositions contain such supporting testimony, but they are not part of the record before us and were not properly before the trial court.

It is for these reasons that we conclude that the judgment should be reversed and the cause remanded for a new trial on all issues, including that of damages. On remand, counsel should first be permitted to amend their pleadings, if they be so inclined, and trial should then be on the issues as then framed, with counsel being permitted to develop their case free from the restriction that they may not examine on any matter covered in the depositions.

Judgment reversed.