**FOREMOST MOBILE HOMES MANU-FACTURING CORPORATION,**
**Appellant,**

v.

**Louise STEELE, Appellee.**

**No. 17483.**

Court of Civil Appeals of Texas,
Fort Worth.

Feb. 22, 1974.

Kilgore & Kilgore and Robert M. Thornton, Dallas, for appellant.

Penfold & Arledge and David A. Arledge and Craig Penfold, Dallas, for appellee.

## OPINION

MASSEY, Chief Justice.

Plaintiff Louise Steele purchased a new mobile home from dealer Whittle, who sold such character of merchandise of various manufacturing companies including that of the defendant Foremost Mobile Homes Manufacturing Corporation. Many defects in the mobile home so purchased became apparent within a very few weeks, by reason of which she considered its worth to be several thousands of dollars less than the price she had paid for it. The price paid was deemed synonymous with the amount of its market value had it been delivered to her free of the defects. The mobile home was never considered to be useless for the purpose for which it was purchased, but rather was considered to be less useful by reason of the defects.

Plaintiff sued the defendant manufacturer. Trial was to a jury and upon the verdict returned judgment was rendered for plaintiff under general principles of law (see 51 Tex.Jur.2d, p. 143, "Sales"). See 353 "(General measure of damages) Under Uniform Commercial Code", i. e. for the difference in value of the trailer between that condition in which its delivery was expected and that condition in which it was accepted. No part of the judgment was predicated upon any theory that dealer Whittle's actions became those of the manufacturer under the doctrine of *respondeat superior*. The defendant appealed.

Reversed.

At the outset we notice that the case was not tried to judgment on any theory of express warranty. As in instances of most new purchases of valuable personal property there was a written warranty by the manufacturer to the initial retail purchaser, to pass by the hand of the intermediate dealer who accomplished the retail sale.

The written express warranty purported to be in lieu of all other warranties, express or implied. Prescribed thereby

was the manufacturer's limitation of liability to "making good, at our factory, any part or parts manufactured by Foremost M. H. Mfg. Corp., upon its or their return to the factory in Denton, Texas, with transportation charges prepaid . . . which upon our examination shall disclose, to our satisfaction, to be thus defective." Under present Texas law plaintiff lost no right by reason of her acceptance of the written warranty. In this case we can and do treat it as a nullity.

■ Under general principles of law in order to maintain suit and recover judgment against a defendant on the theory of breach of implied warranty of personalty sold by contract there must have been privity of contract between plaintiff and defendant. Presumed, of course, is that in no sense does the action sound in tort.

1 Williston on Sales, Revised Edition, p. 512, "Conditions and Warranties", Sec. 200, "Other American authorities requiring intent on the part of the seller", reads in part as follows: "Where a warranty is based on a contract and not on an affirmation or representation, there must be a manifestation of mutual assent to form the contract (not necessarily mental assent or actual intent), and it then becomes a question of interpretation whether the contract contains a warranty. The broad statements that intent is a necessary element of warranty are doubtless due to the unfortunate assumption that all warranties are exclusively contractual. . . ." In the earlier paragraph 195, "Early law of warranty", the early cases were conceived as those in which action taken would sound in tort rather than contract. Of this notice was taken by the Supreme Court in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup., 1967), a products liability case. McKisson was a case where the liability of the manufacturer was held existent despite the fact that there was no privity between plaintiff and manufacturer and, of course, was one which could be properly said to sound in tort. Development of the law imposing liability on the manufacturer in products liability cases finds its inspiration in antecedent tort law and not contract law.

However the plaintiff argues that the rule of liability despite the absence of privity of contract should be similarly applied to the instant case. Necessarily does plaintiff's ability to sustain her judgment turn upon an ability to persuade this court to so hold. She cites as authority for the contention certain language from Ford Motor Company v. Lemieux Lumber Company, 418 S.W.2d 909 (Beaumont Tex.Civ.App., 1967, no writ history). In that case we find that what was involved was a truck purchased by the plaintiff which the Ford Motor Company itself, as manufacturer, had represented would perform certain extraordinary functions, but which, after purchase, was found inadequate in that such functions could not be performed without mechanical mishap destructive of the utility of the truck even as applied to the more normal truck functions. The representations, aforesaid, were made in advertising material furnished by the manufacturer through magazine pictures, and in brochures supplied to the dealer who sold the truck to plaintiff.

The holding of Ford Motor Company v. Lemieux Lumber Company, supra, a plea of privilege case, was that suit might be maintained in such a case; i. e. in an action based upon a breach of the implied warranty that the product was suitable for the purpose for which it was sold. Cited as authority by the opinion was United States Pipe & Foundry Co. v. City of Waco, 130 Tex. 126, 108 S.W.2d 432 (1937) in which recovery was permitted directly against the manufacturer who made representations to plaintiff as to what its product would do, even though there was no privity between it and plaintiff. By reference to the opinion it is found that the manufacturer had by representations of the fitness and quality of its pipe, made to the City of Waco, induced it to specify its use by the contractor who installed it. There was privity of contract between the

City of Waco and the contractor, but none to the United States Pipe & Foundry Company in the usual sense. Recovery of the plaintiff was not by contract, but rather on the tort theory of fraudulent inducement of the plaintiff to enter into a contract with another. That was also the theory under which the plea of privilege was overruled in Ford Motor Company v. Lemieux Lumber Company.

As we view them both the Ford Motor Company v. Lemieux Lumber Company and United States Pipe & Foundry Company cases involve tort. They are not cases involving pure contract law, such as the instant case. Interesting is the text of 50 Tex.Jur.2d, p. 625, "Sales", Sec. 238, "Requirement of privity of contract", and the citations of cases and authorities thereunder.

A recent case of pure contract law involving mere economic loss holding that privity of contract was required in order to recover damages for its breach is Thermal Supply of Texas, Inc. v. Asel, 468 S.W.2d 927, 930 (Austin Tex.Civ.App., 1971, no writ history). This has always been the law, and, even under the provisions of the Business and Commerce Code of Texas, V.T.C.A., continues to be the law. Of interest upon certain effects of the Business and Commerce Code upon antecedent Texas law is Lankford v. Rogers Ford Sales, 478 S.W.2d 248 (El Paso Tex.Civ.App., 1972, writ ref., n. r. e.).

■ If our interpretation and holding upon the law is correct it becomes clear that the plaintiff was not entitled to any recovery of the defendant manufacturer. That is not to say that she has no cause of action against any defendant, but rather than she failed to establish one against the only defendant, the manufacturer, because upon the trial of her case she failed to show any privity of contract with it. Her cause of action lay wholly within and must be decided by principles of contract law exclusively and in such a situation proof of contractual privity is a necessary prerequisite to any recovery.

■ Even had plaintiff's cause of action been against a proper defendant there was no evidence to support the measure of damages upon which her case was submitted to the jury. The special issues upon damages submitted questions in answer to which the jury found amounts of money which represented the two material figures, value of the trailer in the condition which would have obtained had it been of merchantable quality (as it should have been under provisions of law) and value of the trailer in its defective condition at time of the delivery. On the last stated value the only evidence was upon the cost estimated as that to be expended in order to remedy the defective condition by replacement and repair. Such evidence does not in and of itself establish an amount which might be deducted from the first value so as to constitute proof of that reduced amount representing value of the trailer in its defective condition at time of the delivery. Only if there had been additional testimony which established that it would do this would it have probative force and effect for such a purpose. There was not a submission of any issue upon cost of repairs to the house trailer. Furthermore, the evidence on the various expense items upon repairs was not accompanied by proof that such expenses were reasonable in amount.

If such matters were controlling of our action on the appeal we would be required to remand the case for another trial. For reasons earlier stated we deem it our duty to reverse and render, whereby plaintiff will take nothing by her suit.

Judgment is reversed and rendered.